### THE MONARCH.

### THE WILL.

#### (District Court, S. D. New York. October 21, 1898.)

ANCHORAGE GROUND—WRECKING OPERATIONS—ACT OF MAY 16, 1888—APPLICATION FOR PERMIT WITHIN 24 HOURS SUFFICIENT UNDER REQUIREMENT OF IMMEDIATE NOTICE.

Upon the sinking of the steamer Catskill by collision in the middle of the Harlem river, the wrecking derricks Monarch and Will went to her assistance and made fast to her. Though touching bottom the Catskill drifted with the tide, taking the M. and W. with her, and on the following morning she was towed by them to the flats on the west side 'of the river. In an action to recover a penalty for anchoring outside of anchorage ground (1 Supp. Rev. St. p. 586), it appearing that the claimants had received permission from the department to go to the assistance of wrecks, provided immediate notice thereof was given; *held,* that notice mailed the same day to the department and an actual permit issued within 24 hours, were sufficient to relieve the vessel from any penalty, without reference to the question whether the act of congress embraced anchoring for the purpose of wrecking operations or not.

Wallace Macfarlane, U. S. Atty.

Harington Putnam, for the derricks Monarch and Will.

BROWN, District Judge (orally). It is not necessary in this case to decide the general question whether wrecking operations are

within the act of May 16, 1888 (1 Supp. Rev. St. p. 586). See The Chauncey M. Depew, 59 Fed. 791. Such operations vary greatly in character. This case it is true presents an almost extreme instance of necessity for immediate action; and I have no doubt that a vessel approaching another vessel in distress and mooring to her for the purpose of immediate removal, though the vessel in distress may touch the bottom, is not within the contemplation of this act of congress.

The act authorizes the secretary "to define and establish an anchorage ground for vessels in the Hudson and East rivers"; it also adds "and to adopt suitable regulations in relation thereto."

Now it often happens that wrecking operations are protracted. Some are brief; and some, like this, are for the simple purpose of hauling a sunken boat to the nearest flats out of the way of traffic, where the sunken vessel is herself a very dangerous obstruction, particularly in the nighttime. In other cases there may be long-continued obstruction when large vessels like the Monarch and Will are used for wrecking operations, and the place may be so narrow that the long-continued presence of a fleet of wrecking vessels would be felt to be, and would really be, a great impediment to ordinary navigation.

I am not prepared, therefore, to say that the authority of the secretary of the treasury to provide suitable regulations in regard to the anchorage of vessels may not extend to wrecking operations where their continuance would obstruct commerce and navigation. The circumstances are so different in different cases that I do not think it desirable to attempt to define any universal rule.

In this case the purpose was to tow the Catskill immediately away from mid-river where she was sunk and constituted a dangerous obstruction. This was really in aid of the exact purpose of the anchorage law.

The department, while claiming jurisdiction of wreckage cases, has generally treated the matter in a liberal way. Its letters of May 3, 1893, and of November 17, 1892 (59 Fed. 792), authorized the principal companies here to proceed at once to the aid of wrecks requiring immediate assistance, but with a provision that they must "apply immediately after they begin work for the proper permit." This case has arisen under the application of that regulation. I do not think it would be useful for me to enter into any discussion of the authority of the department to prescribe the regulation in just this form. But it ought to be given a fair interpretation, securing the general objects of the statute, while administered liberally in favor of assistance to wrecks.

The requirement that "notice must be given immediately after the work is begun" is a condition subsequent, not a condition precedent. The usual legal rule allowing 1 day or 24 hours in such cases may properly be applied here. I know no other rule that is applicable in determining what is immediate notice.

The evidence shows that the application here was really mailed on the same day that the wrecking boats went to the assistance of the Catskill; and that the permit itself was signed by Capt. Stodder, in less than 24 hours after the work was begun. The general

permission given to the wrecking company seems to furnish a fair and sufficient scope for the exercise of wrecking operations with celerity; and any further questions as to the application of the act may be left to future consideration.

As no penalties were, therefore, incurred, the libels should be dismissed.